# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# SEATTLE DIVISION

| | |
|---|---|
| ANCA HUTCHINGS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>IMMUNE DESIGN CORP., DAVID BALTIMORE, FRANKLIN M. BERGER, LEWIS COLEMAN, SUSAN L. KELLEY, CARLOS PAYA, ED PENHOET, and WILLIAM R. RINGO,<br><br>Defendants. | Case No. 19-cv-00373<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Anca Hutchings ("Plaintiff"), by and through her undersigned attorneys, brings this action against Immune Design Corp. ("Immune Design" or the "Company"), David Baltimore, Franklin M. Berger, Lewis Coleman, Susan L. Kelley, Carlos Paya, Ed Penhoet, and William R. Ringo, the members of Immune Design's board of directors (collectively referred to as the "Board" or the "Individual Defendants," and together with Immune Design, "Defendants") for violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14d-9, 17 C.F.R. 240.14d-9, in connection with the tender offer by Merck Sharp & Dohme Corp. ("Merck") to acquire all outstanding shares of Immune Design common stock for a price or $5.85 per share (the "Tender Offer"). Plaintiff alleges the following based upon personal knowledge as to herself, and upon information and belief, including the investigation of Counsel, as to all other matters.

COMPLAINT - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**NATURE OF THE ACTION**

1. On February 20, 2019, Immune Design entered into an Agreement and Plan of Merger ("Merger Agreement") with Merck and its wholly-owned subsidiary, Cascade Merger Sub, Inc. ("Merger Sub"), pursuant to which Merger Sub would initiate a tender offer to acquire all outstanding stock of Immune Design, with Immune Design surviving as a wholly-owned subsidiary of Merck.

2. As part of the Proposed Transaction, Merger Sub initiated a tender offer on March 5, 2019 for all issued and outstanding shares of Immune Design common stock at a price of $5.85 per share (the "Merger Consideration"). The Tender Offer is set to expire at midnight, one minute after 11:59pm Eastern Time, on April 1, 2019 (the "Expiration Date").

3. In connection with the commencement of the Tender Offer on March 5, 2019, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the United States Securities and Exchange Commission (the "SEC"). The Recommendation Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the process leading to the signing of the Merger Agreement, and the financial projections provided to the Board and its financial advisor, Lazard GCA Advisors, LLC ("Lazard Frères & Co. LLC"), by Company management. Without all material information, Immune Design stockholders are materially mislead regarding their decisions to tender their shares to Merger Sub.  The failure to adequately disclose such material information constitutes violations of §§ 14(e) and 20(a) of the Exchange Act

4. For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify existing and future irreparable harm to Plaintiff and other Immune Design stockholders.

## PARTIES

5. Plaintiff is, and at all relevant times has been, a stockholder of Immune Design.

6. Defendant Immune Design is a company organized under the laws of the state of Delaware. Immune Design maintains its principal executive offices at 1616 Eastlake Avenue East, Suite 310, Seattle, Washington, 98102. Immune Design's common stock is listed for trading on the NASDAQ under the ticker symbol "IMDZ."

7. Defendant David Baltimore has served as a director of the Company since June 2008.

8. Defendant Franklin M. Berger has served as a director of the Company since March 2014.

9. Defendant Lewis Coleman has served as a director of the Company since March 2015.

10. Defendant Susan L. Kelley has served as a director of the Company since June 2016.

11. Defendant Carlos Paya has served as the President, Chief Executive Officer, and as a director of the Company since May 2011.

12. Defendant Ed Penhoet has served as a director of the Company since June 2008 and as Chairman of the Board since January 2013.

13. Defendant William R. Ringo has served as a director of the Company since February 2014.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e) and 20(a) of the Exchange Act.

15. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

1  District as to render the exercise of jurisdiction over Defendant by this Court permissible under
2  traditional notions of fair play and substantial justice.

3      16.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C.
4  § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an
5  effect in this District; (ii) Immune Design maintains its principal place of business in this District
6  and each of the Individual Defendants, and Company officers or directors, either resides in this
7  District or has extensive contacts within this District; (iii) a substantial portion of the transactions
8  and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents
9  pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in
10 this District; and (v) Defendants have received substantial compensation in this District by doing
11 business here and engaging in numerous activities that had an effect in this District.

## SUBSTANTIVE ALLEGATIONS

**Company Background and the Proposed Transaction**

17.    Immune Design is a clinical-stage immunotherapy company that focuses on in vivo approaches to oncology therapeutics. Its primary product candidate, G100, works to create a systemic anti-tumor immune response from a local injection. Despite its focus in oncology, the Company believes its technology has therapeutic potential in infectious and allergic diseases as well. The Company has established successful collaborations with global therapeutic companies, including two clinical trial collaborations with Merck announced in August 2015.

18.    On February 21, 2019, Immune Design and Merck announced the Proposed Transaction through a press release, which states in relevant part:

> KENILWORTH, N.J. & SEATTLE & SOUTH SAN FRANCISCO, Calif.--(BUSINESS WIRE)--Merck (NYSE:MRK), known as MSD outside the United States and Canada, and Immune Design (NASDAQ:IMDZ), today announced that the companies have entered into a definitive agreement under which Merck, through a subsidiary, will acquire Immune Design for $5.85 per share in cash for an approximate value of $300 million.
>
> "Scientists at Immune Design have established a unique portfolio of approaches to cancer immunization and adjuvant systems designed to enhance the ability of a vaccine to protect against infection, which could meaningfully improve vaccine development," said Dr. Roger M. Perlmutter, president, Merck Research Laboratories. "This acquisition builds upon Merck's industry-

COMPLAINT - 4

> leading programs that harness the power of the immune system to prevent and treat disease."
>
> Immune Design is a late-stage immunotherapy company employing next-generation in vivo approaches to enable the body's immune system to fight disease. The company's proprietary technologies, GLAAS® and ZVex®, are engineered to activate the immune system's natural ability to generate and/or expand antigen-specific cytotoxic immune cells to fight cancer and other chronic diseases.
>
> "Merck has a rich history of discovery and innovation and a strong track record of developing meaningful therapeutics and vaccines," said Dr. Carlos Paya, president and chief executive officer, Immune Design. "We believe this agreement creates shareholder value by positioning our technologies and capabilities for long-term success with a leading, research-driven biopharmaceutical company."
>
> Under the terms of the acquisition agreement announced today, Merck, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of Immune Design. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Immune Design's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Merck will acquire all shares not acquired in the tender through a second-step merger. The transaction is expected to close early in the second quarter of 2019.
>
> Credit Suisse acted as financial advisor to Merck in this transaction and Gibson, Dunn & Crutcher LLP as its legal advisor. Lazard acted as financial advisor to Immune Design and Cooley LLP as its legal advisor.

**The Recommendation Statement Is Materially Incomplete and Misleading**

19.     On March 5, 2019, in order to convince Immune Design stockholders to tender their shares in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Recommendation Statement containing the recommendation of the Board. The Recommendation Statement solicits the Company's stockholders to tender their shares in favor of the Proposed Transaction. Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Recommendation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(e) and 20(a) of the

Exchange Act.

***Materially Misleading Omissions Concerning the Company's Financial Projections***

20. The Recommendation Statement discloses projections for two different scenarios: Case 1 is the "Standalone Probability-Adjusted Product Run-Off Projections" and Case 2 is the "Probability-Adjusted Going Concern DCF Projections." For both of these scenarios, the Recommendation Statement discloses projections for the entire Company of Total Probability-Adjusted Revenue, Non-GAAP Operating Income, and Free Cash Flow for the years 2019 through 2038 for Case 1,[1] and 2019 through 2030 for Case 2.

21. However, in the summary of Lazard's *Probability-Adjusted Product Run-Off/Sum-of-the-Parts DCF Analysis*, the Recommendation Statement discloses that Lazard performed a separate DCF analysis for each of the following products and collaborations of the Company:

- G100 in 4L Follicular Lymphoma ("4L FL");
- G100 in 2L Follicular Lymphoma ("2L FL");
- G100 in 2L Cutaneous T-Cell Lymphoma ("CTCL");
- G100 in 2L Marginal Zone Lymphoma ("MZL");
- HSV collaboration with Sanofi;
- A potential RSV collaboration; and
- A potential HPV collaboration with Merck & Co.

22. Lazard used "risk-adjusted estimates of the free cash flows to be generated from each product and collaboration described above." These estimates were all "reflected in the" projections provided by the Company.

23. Thus the Recommendation Statement misleads Immune Design stockholders by omitting the material projections of free cash flows for each of the products and collaborations, as well as the risk-adjustments made by Lazard that were not accounted for in Company

---

[1] Case 1 includes projections for each year through 2028, and then every two years through 2038E.

management's projections.  The Recommendation Statement omits the actual projections and financial metrics used by Lazard in completing its financial analysis, including those used by Lazard to calculate the Company's unlevered free cash flows and the definition of the projected free cash flows disclosed in the Recommendation Statement.

24. Omission of the above-referenced projections renders the financial projections included on pages 26 and 27 of the Recommendation Statement materially incomplete and misleading.  If a rrecommendation statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  Here, the omission of this information would tend to cause stockholders to undervalue the Company and its intellectual property by failing to disclose the projected cash flows of the various business lines.

25. These projections were provided to Lazard and the Board, and used by Lazard for the purpose of creating its fairness opinion that could then be used in soliciting stockholder approval of the Proposed Transaction.  Because these analyses were presented to the Immune Design stockholders as evidence of the fairness of the Proposed Transaction, the omission of the financial projections materially misleads those same stockholders as to the accuracy and value of the analyses.

*Lazard's Valuation Analyses and Fairness Opinion*

26. The Recommendation Statement describes Lazard's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Lazard's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Immune Design stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining how to cast their vote on the Proposed

COMPLAINT - 7

Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Immune Design stockholders.

27. With respect to Lazard's *Comparable Companies – Peak Sales Multiples Analysis*, the Recommendation Statement fails to disclose the Enterprise Value and Probability-Adjusted Peak Sales for each of the selected companies that were used to derive an implied value per share.

28. With respect to Lazard's *Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the Enterprise Values and Probability Adjusted Peak Sales Multiples for each of the selected precedent transactions.

29. With respect to Lazard's *Probability-Adjusted Going Concern DCF Analysis*, the Recommendation Statement omits: (i) the inputs and assumptions underlying the range of discount rates of 12% to 15%; (ii) the range of terminal values of Immune Design; (iii) and the assumed value of Immune Design's considerable net operating losses ("NOLs").

30. With respect to Lazard's *Probability-Adjusted Product Run-Off/Sum-of-the-Parts DCF Analysis*, the Recommendation Statement omits: (i) the inputs and assumptions underlying the range of discount rates of 12% to 15%; (ii) the risk-adjusted estimates of the free cash flows generated by each product and collaboration; (iii) the range of terminal values for each of the cash flows generated by each product and collaboration; (iv) and the assumed value of Immune Design's considerable net operating losses ("NOLs").

31. In sum, the omission of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares in favor of the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

# CLAIMS FOR RELIEF
# COUNT I

**Claim for Violation of Section 14(e) of the Exchange Act and Rule 14d-9
Against the Individual Defendants and Immune Design**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

34. As discussed above, Immune Design filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

35. Defendants violated § 14(e) of the Exchange Act and Rule 14d-9 by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the tender offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36. The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

37. In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of

COMPLAINT - 9

§ 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

38.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

39.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

40.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II

**Claim for Violation of Section 20(a) of the Exchange Act**

**Against the Individual Defendants**

41.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Immune Design within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Immune Design and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Recommendation Statement.

45. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring that the Recommendation Statement is materially false or misleading;

(B) enjoining, preliminarily and permanently, the Proposed Transaction;

(C) in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D) directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: March 14, 1019

By: /s/ *Roger Townsend*
Roger M. Townsend, WSBA No. 25525
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Telephone: (206) 652-8660
Facsimile: (206) 652-8290

OF COUNSEL:
Donald J. Enright (*pro hac vice* pending)
Elizabeth K. Tripodi (*pro hac vice* pending*)*
LEVI & KORSINSKY, LLP
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567

*Counsel for Plaintiff Anca Hutchings*